MILLER v. WACLARK REALTY CO.

(Supreme Court, Appellate Division, First Department. June 24, 1910.)

BROKERS (§ 40*)—RIGHT TO COMMISSIONS—AGENCY.

Where plaintiff in negotiating an attempted sale of certain realty, acted as agent for the purchaser and did nothing in the interest of the owner, the property never having been put into plaintiff's hands for sale, and his connection with the transaction being chiefly, if not wholly, in consequence of the fact that he had a customer who desired to purchase the property, he was not entitled to recover commission on the execution of a contract in fulfillment of an option, the purchase never having been completed.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 38–40; Dec. Dig. § 40.*]

Appeal from Trial Term, New York County.

Action by Benjamin Channing Miller against the Waclark Realty Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Atwater & Cruikshank (Alfred B. Cruikshank, of counsel), for appellant.

Holden & Rogers (Clarence De Witt Rogers, of counsel), for respondent.

CLARKE, J. The defendant corporation is a mere holding company for the benefit of W. A. Clark, who owns practically all of the

stock, and who incorporated it for the purpose of taking title to property purchased by him. It has never done any business or been engaged in dealing in real estate. It owned a certain plot of unimproved land on the northwest corner of Park avenue and Seventy-Sixth street, borough of Manhattan, about 55 feet by 102 feet in dimensions. This property had never been offered for sale in any manner, either by advertisement, by signs on the property, or by being put upon the books of any real estate broker. The plaintiff, who had been a personal acquaintance of Senator Clark for some years, was employed in a real estate broker's office. He had a fellow clerk by the name of Duffie. Duffie testified that he knew a Miss Brown and a Mrs. Durant. "They employed me to get the building loan, and I was to be paid a commission for that if I got it. That scheme was all gone into before I made the offer for this property. These ladies then got up or prepared this scheme to improve this property with a building loan, and came to me, and I then looked about for the owner of the property. I talked it over with them; I advised them on it. I then looked about for the owner, and I mentioned it to Miller here. He told me that he knew Senator Clark. Then I stated that I would divide the commission with him if he could get it. I told him to offer $135,000 for this property. He told me he could not get it for that. Mr. Miller told me if I could get them to pay $150,000, Senator Clark would take it." The plaintiff testified:

"Duffie probably asked me if I could buy that piece of property, or get a price on that piece of property. He was aware that I was acquainted with Senator Clark, and that is how he came to ask me about it. He told me that Clark owned the property, and knowing I was well acquainted with him, he asked me if I could buy it. * * * Duffie and I were interested in this transaction together in the way that he asked me to get a price on that property, and that he had a client that would like to buy it. * * * Duffie is interested in this case. He is to get part of the commission which I recover here and he is in court to be one of my witnesses. * * * Mr. Duffie said to me at the beginning that he would divide the commissions with me."

An offer was made for the property for $135,000 which was positively refused. Subsequently the price was increased to $150,000, which was accepted, and a paper was executed as follows:

"The Waclark Realty Company, in consideration of the sum of two thousand dollars ($2,000) to it in hand paid, receipt whereof is hereby acknowledged, hereby agrees with Helen S. Harman Brown and Jane S. Durant, that it will, on or before the 20th day of June, 1908, if required, enter into a contract for the sale of the real property at the northwest corner of Park avenue and Seventy-Sixth street, in the borough of Manhattan, city of New York, being fifty-five feet front on Seventy-Sixth street and one hundred and two feet and two inches on Park avenue, be the said dimensions more or less, which contract shall be in the usual form for the sale of said real property, within 30 days from its date, to said Miss Brown and Mrs. Durant, or such persons as they shall direct, by a full covenant and warranty deed for the purchase price of $150,000, the $2,000, the consideration of this option, to be applied upon such purchase price, if the option be exercised."

On the day the option expired, a written contract of sale was entered into with one Harold Carpen, conceded to be a dummy and who had no intention of completing the purchase, and the purchase never was completed, and no moneys were ever paid, except the $2,000 upon

the execution of the option. Based upon the execution of the written contract to sell, the plaintiff brings this suit for $1,500, as 1 per cent. commissions upon the agreed price, and has obtained a verdict.

We are of the opinion that said verdict is not supported by the evidence and is against the weight thereof, in that the plaintiff has failed to prove that he was ever employed by the defendant as a broker to sell its property. His negotiations were entirely those of a purchaser. He did nothing in the interests of or for the benefit of the defendant; the property was never put into his hands for sale; he made the offers, and he represented people whom he continually spoke of as his clients. The language of Mr. Justice Hirschberg in Haynes v. Fraser, 76 App. Div. 627, 78 N. Y. Supp. 794, is appropriate. "The defendant certainly did not offer the property in question for sale in the first instance, either through the plaintiff's agency or otherwise. On the contrary, it is beyond dispute that the plaintiff's connection with the transaction was chiefly, if not wholly, in consequence of the fact that he had a customer who desired to buy, and that it was his efforts in his customer's behalf which finally resulted in inducing the defendant to sell at a mutually satisfactory price. The plaintiff, although known to the defendant to be a real estate broker, was known to him only as the agent of a prospective purchaser of the defendant's property, and his activity as an agent was developed wholly in buying the property and not in selling it."

In Kaake v. Griswold, 104 App. Div. 137, 93 N. Y. Supp. 459, it is said:

"In brief, the brokers, so far as the projected transfer of the lease was concerned, were acting throughout the transaction as the agents of the intending vendee rather than as the agents of the intending vendor."

In the evidence both the plaintiff and Duffie continually talk of these ladies as their clients; the initiative came from them; they were working together; they agreed to divide their commissions. When the option was about to expire, they procured a dummy to enter into the written contract for the purpose of saving their claim. They were practically partners in the enterprise. They did nothing for the benefit of the defendant, made no investigation as to the responsibility of the proposed purchasers, and their efforts seemed to be confined to making a technical case for a claim for commission. The basis for a claim for commissions is the employment. This essential element in the case is not supported by the evidence.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.